## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **JAMES R. AURSBY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:21CV00339 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **KYLE THOMAS RICHARDSON,** | ) | JUDGE JAMES P. JONES |
| **ET AL.,** | ) | |
| Defendants. | ) | |

*James R. Aursby, Pro Se Plaintiff; D. Patricia Wallace, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendants Kyle Thomas Richardson, Hiram MacPherson, Steven Herrick, Harold W. Clarke, Woodson, and White; Taylor D. Brewer and Katherine E. Morley, MORAN REEVES & CONN PC, Richmond, Virginia, for Defendants Derinda Dameron, R.N., Kyle Smith, M.D., Gregory Brian Saathoff, M.D., David Smith, O.D., and Debbie Gregory; Johneal M. White, GLENN ROBINSON CATHEY MEMMER & SKAFF PLC, Roanoke, Virginia, for Defendant Irene Payne Hyre; and Guy M. Harbert, III, GENTRY LOCKE, Roanoke, Virginia, for Defendant Steve Clink.*

Plaintiff James R. Aursby, a Virginia inmate proceeding pro se, alleges that when he was a passenger in a prison-owned transport vehicle without a seatbelt, the vehicle was involved in an accident that caused him injury. Aursby sues prison officials, employees, and medical providers, as well as the transport vehicle manufacturer, an insurance claims adjuster, and the other party to the accident. For the reasons set forth herein, I will dismiss this action as to all defendants.

I. BACKGROUND.

Aursby is confined at Augusta Correctional Center (Augusta). He alleges that on December 6, 2019, he was being transported in a prison vehicle "shackled and handcuffed with chains," Compl. 9, ECF No. 1, but not secured by a seatbelt, when another vehicle collided with the transport and the impact threw Aursby out of his seat.[1] He claims that prison transport officers Kyle Thomas Richardson and Hiram MacPherson failed to ensure that he was secured by a seatbelt. As a result of the incident, Aursby claims that he "sustained head, neck, and back injuries," pain in his right ankle from the shackles, post-traumatic stress syndrome, and impaired vision, allegedly caused by "shattered glass fragments [that he believes] flew into [his] eyes." *Id.* at 9, 10. Aursby alleges that former Warden Woodson was at the accident scene and was deliberately indifferent regarding whether Aursby thereafter received adequate medical care. Suppl. Compl. 4, ECF No. 24. He also asserts that Virginia Department of Corrections (VDOC) Director Harold W. Clarke "knew or should have known about the condition of the bus." Compl. 11, ECF No. 1.

Aursby alleges that the other driver in the accident, Irene Payne Hyre, "was negligent and deliberate[ly] indifferent towards [his] health and safety when she crashed into a state property vehicle by swerving into [its] lane." Compl. 13, ECF

---

[1] Page numbers used in this Opinion and Order in citations to the Complaint, the Supplemental Complaint, and attached exhibits, ECF Nos. 1 and 24, refer to the numbers assigned to the cited page by the court's electronic filing system.

No. 1.  Aursby contends that Hyre "submitted a false report of a loss to State Farm," by claiming that the VDOC vehicle struck Hyre's vehicle.  *Id.* at 5.  He asserts that in response to a "subrogation demand" by the state, "it was determined that Defendant Hyre was at fault for the loss and loss settlement payment for the vehicle damage only was issued" to the state.  *Id.*  In another section of his Complaint, Aursby refers to Hyre's "reckless disregard of public and traffic safety."  *Id.* at 17.

Aursby also sues defendant Steve Clink as a representative of an insurance company.  Aursby alleges that Clink has "first hand knowledge" about the accident and that Clink knows that the insurance company investigated that accident and ultimately determined that Hyre "was at fault and fled the scene of an accident," and that Clink, "on the behalf of State Farm will be responsible for payment."  *Id.* at 7, 13, 16.

Aursby has also named as a defendant, "Chevrolet, Inc."  *Id.* at 8.  He asserts that Chevrolet, Inc., "was negligent and deliberate indifferent towards [his] health and safety in violation of the Commerce Clause in Article 1, Section 8 of the United States Constitution" and in violation of the Eighth Amendment's prohibition against cruel and unusual punishment as well.  *Id.* at 17.  Aursby claims that Chevrolet, Inc., is located in Michigan and sold the vehicle to the VDOC, but "failed to provide safety device equipment or provided defective safety device equipment which contributed to [Aursby's]" injuries.  *Id.*

Aursby's attempt to accomplish service of process on Chevrolet, Inc., was not successful.  Among his exhibits, he submits a copy of a letter dated October 14, 2021, stating: "Please be advised that General Motors LLC is not authorized to accept service for the entity named in the attached documents (Chevrolet Inc.)." Mot. Amend Attach., ECF No. 30-1.  The magistrate judge denied Aursby's motion seeking to substitute GM as a defendant in place of defendant Chevrolet.  Aursby has moved for reconsideration of the magistrate judge's order.  For convenience, in this Opinion, I will refer to this defendant as "Chevrolet/GM."

The Complaint and the Supplemental Complaint do not provide a chronological sequence of events following the accident.  It is clear from the record, however, that Aursby received some medical treatment and mental health care after this incident.  A provider referred Aursby to optometrist David Smith, O.D.  The plaintiff's exhibits indicate that Smith examined Aursby on January 10, 2020, reportedly found no glass in his eyes, prescribed eye drops and cold compresses, and advised him to file an Offender Request for another eye doctor examination if warranted.

Aursby claims that two years after the accident, when he filed this lawsuit, he was still suffering "constant pain" from the injuries he received.  Compl. 15, ECF No. 1.  Based on his continuing discomfort and condition, he asserts that various VDOC medical providers and staff have not provided him with adequate medical or

mental health care since the accident.  He contends that the prison medical doctor, defendant Kyle Smith, M.D., did not order an MRI, X rays, a CAT scan, or physical therapy to address Aursby's pain complaints.  Aursby asserts that Gregory Brian Saathoff, M.D., a psychiatrist, did not provide him with sufficient medication to address, satisfactorily, the effects of his alleged PTSD.  Aursby alleges that David Smith, "an alleged optometrist who provided eye health care" to Aursby after the accident, is not actually licensed as an optometrist and "forged private health care records" about Aursby's eye health care.[2]  *Id.* at 7.  Aursby also alleges that VDOC administrators, like Director Clarke, "knew or should have known" about Smith's alleged lack of licensure.  *Id.* at 11.

Aursby complains that other medical personnel at Augusta conspired to deny him proper care or should somehow have corrected the allegedly inappropriate judgments of his medical providers.  Specifically, he sues defendant Derinda Dameron, a registered nurse and the Health Services Administrator, and medical

---

[2] In support of this accusation against David Smith, Aursby presents a Complaint Form he submitted to the Enforcement Division of the Department of Health Professions, claiming that David Smith had contracted as an optometrist with the VDOC.  This Complaint Form, dated February 16, 2021, alleges that Smith's treatment recommendation for Aursby of "Clear Eyes was not effective nor professional" and complains that even with this treatment, Aursby's eyes are "always red, not able to focus, sight is diminished greatly, very painful.  Improper treatment and no follow up."  Compl. Ex. (B)(1) at 7–8, ECF No. 1-1.  Aursby also submits a copy of a letter from the Enforcement Division, dated March 23, 2021, stating that it was "unable to identify David Smith as a licensed, registered, or certified health care practitioner in Virginia with the information [Aursby] provided."  *Id*. at Ex. (C) at 15.

records custodian, Debbie Gregory.  Suppl. Compl. 3, ECF No. 24.  He faults these defendants for "upholding" medical judgments about his care by the medical doctor, the psychiatrist, and the optometrist.  *Id.* at 3, 4.  Finally, Aursby complains that various other VDOC officials failed to ensure that he received proper medical or mental health care: Steven Herrick (identified as VDOC Health Services Director), Clarke as VDOC Director, and former Augusta wardens — defendants Woodson and White.  Specifically, Aursby alleges that White violated his rights by failing "to order health services to schedule [Aursby] an appointment with a heart and vital organ specialist to assess [his] life expectancy due to the car accident."[3] *Id.* at 7.

Aursby demands injunctive relief pursuant to 42 U.S.C. § 1983 directing the VDOC defendants to provide him with an MRI, a CAT scan, and an eye examination by a qualified eye doctor.  He also seeks adequate mental health care for his alleged PTSD and monetary damages.  Aursby asserts that this court has jurisdiction over his claims pursuant to 28 U.S.C. § 1331 (authorizing jurisdiction over questions of federal law) and 1343(a)(3) (authorizing jurisdiction over certain civil rights claims).  Compl. 4, ECF No. 1.  He contends that he seeks injunctive relief pursuant to 28 U.S.C. § 2283 and 2284.  Aursby also asks the court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over his state law claims.  Aursby states

---

[3] The record does not include any allegation or exhibit indicating that any medical provider has recommended or ordered an evaluation of Aursby by such a specialist.

that the court has "diverse [sic] jurisdiction" because the case "involves defendants located outside the State of Virginia." *Id.*

The VDOC defendants and the medical provider defendants have both filed motions to dismiss pursuant to Rule 12(b)(6) claiming failure to state a cause of action. The other driver and the insurance adjuster have filed motions to dismiss under Rule 12(b)(1) asserting lack of subject-matter jurisdiction and also under Rule 12(b)(6). Aursby has responded to the defendants' motions, making them ripe for consideration.

## II.  VDOC AND MEDICAL PROVIDER DEFENDANTS.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.[4] In considering the motion and the record, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v.*

---

[4]  I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

*Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," *Twombly*, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." *Iqbal*, 556 U.S. at 678–79.

Under 42 U.S.C. § 1983, an aggrieved party may file a civil action against a person for actions taken under color of state law that violate his federal constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).

Aursby first claims that Richardson, MacPherson, and to some extent, Clarke, knowingly placed his safety in danger by not providing him with a safety belt while transporting him on public roads.  To establish a claim under the Eighth Amendment that officers failed to protect his safety, a prisoner must make two showings: (a) that objectively, he was exposed to "'conditions posing a substantial risk of serious harm'" and suffered a serious injury, and (b) that subjectively, the prison official at issue had a "'sufficiently culpable state of mind.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The objective element in a hazardous conditions claim is evaluated in the light of contemporary standards of decency. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  Inmates may not be deprived of "basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety," and they may not be subjected to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Helling v. McKinney*, 509 U.S. 25, 32, 35 (1993).

The mere failure to provide a seatbelt to a prison inmate during transport is, at most, negligence and does not present a constitutional violation. *Thompson v. Virginia*, 878 F.3d 89, 101 (4th Cir. 2017) (citing many such seatbelt cases); *Scott v. Becher*, 736 F. App'x 130, 134 (6th Cir. 2018) (unpublished) (noting that "failure-to-seatbelt cases involve[] mere negligence" and do not rise to an Eighth Amendment violation) (citing other cases); *Vinson v. U.S. Marshals Serv.*, No. 0:10-79-RMG, 2011 WL 3903199, at *5 (D.S.C. Sept. 2, 2011) (negligent driving and failure to seatbelt do not rise to Eighth Amendment violation), *aff'd*, 459 F. App'x 221 (4th Cir. 2011) (unpublished).

Moreover, I cannot find that Aursby has stated facts showing subjective deliberate indifference by the defendants. Aursby is mistaken about seatbelt law. Federal Department of Transportation's National Highway Traffic Safety Standards exempt prisoner transport vehicles from the requirement of having seat belts. *Ben v. Moskal*, No. CV DKC-17-3054, 2019 WL 4324276, at *3 (D. Md. Sept. 12, 2019), *aff'd,* 801 F. App'x 205 (4th Cir. 2020) (unpublished).

Based on the foregoing, I will grant the VDOC defendants' Motion to Dismiss as to Aursby's claims under § 1983 based on the failure to provide him a seatbelt.

"Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir.

2018).  "Courts treat an inmate's mental health claims just as seriously as any physical health claims."  *Id.* (citing *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977)).

As with other Eighth Amendment legal standards, I must apply a two-part, deliberate indifference analysis to Aursby's medical or mental health care complaints.  The first facet of the inquiry is objective and requires facts showing that the inmate's medical condition is "serious — one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  The second facet of the standard, requiring evidence of deliberate indifference, is subjective.  It is not sufficient to show that an official should have known of risks presented by the inmate's medical condition; rather, the official must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk of harm posed by the official's own action or inaction.  *Id.* at 178.

The deliberate indifference component "requires proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements between a health care professional and patient about the prisoner's treatment plan."  *DePaola v. Clarke*, 394 F. Supp. 3d 573, 590–91 (W.D. Va. 2019).  Moreover, a jail official with lesser or no medical training or expertise is entitled to rely on the professional

judgment of trained medical personnel in determining the appropriate medical care for an inmate's particular medical conditions. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

As noted above, Aursby's Complaint and Supplemental Complaint do not provide a description of the sequence of medical and mental health care provided to him after the accident in December 2019.  Instead, Aursby demands specific medical procedures, based on his broad assertions that the care he received was insufficient and that the various defendants failed to ensure he received proper care.

In addition to these scant and conclusory allegations about his care, Aursby also presents the court and the defendants with a stack of complaint forms and grievances that he wrote about the care he received in the months after the accident. In complaints dated February 16 and March 30, 2021, Aursby stated that David Smith, the optometrist, gave him only "Clear Eyes," and that his eyes and vision had worsened.  Compl. Ex. (B)(1) at 7–8, ECF No. 1-1.  Another exhibit indicates that Aursby had a "follow up" examination by the provider.  Id. at Ex. (D) at 16.  Aursby filed several additional grievance documents about allegedly inadequate treatment of his eyes, only to receive responses indicating that the eye doctor had already examined him.  In a grievance dated February 16, 2021, Aursby claimed that psychiatrist Saathoff had not given him proper treatment, testing, or medications for his mental health issues, which had allegedly worsened.  Aursby also complained

that Saathoff had refused to refer him to a neurologist by informing Aursby that his treating physician would need to make such a referral.  *Id*. at Ex. (B)(3) at 11–12. Aursby wrote a grievance about his treating physician, Kyle Smith, dated February 16, 2021, claiming that the doctor had not provided proper medical treatment, testing, or medication for injuries from the accident.  *Id*. at Ex. (B)(4) at 13-14.  Other submissions indicate that when Aursby complained to nurse Dameron about needing to have his pacemaker checked, she responded that he was being monitored for that issue.  *Id*. at Ex. (F) at 23.  At least one grievance response in the record advised Aursby that because of COVID-19 concerns in 2020, his treating physician would need to determine whether any particular medical complaint was "essential" so as "to require a medical visit" in light of pandemic restrictions.  *Id*. at. 40.

I liberally construe Aursby's combined submissions to assert claims that by May 2021, when he filed this lawsuit 15 months after the bus accident, his medical providers should have known his medical and mental health conditions required more and different steps to reduce his pain and discomfort, which these providers failed to ensure.  He also claims that various VDOC administrative defendants had received, or should have known of, his written complaints about the alleged delays or denials of treatment but did not take decisive action to get him different treatment and testing.  He also asks me to order the VDOC to provide him immediately with specific diagnostic testing that he believes his medical conditions require and to send

him to different eye care and mental health specialists to achieve a better result than his VDOC current caregivers have done.

Aursby's desired outcomes are simply not sufficient in a lawsuit under § 1983. Rather, the analysis that this court must undertake requires facts about Aursby's conditions after the accident; the medical and mental health assessments, treatments, and medications provided to him then; any continuing complaints he conveyed to his providers thereafter; and the responses he received.

For purposes of this Opinion and Order, I will assume without finding that Aursby had some serious medical and mental health needs that resulted from the accident. From the facts before me in this case, however, I cannot find that he has stated any claim that his medical providers or VDOC administrators were deliberately indifferent to any serious needs. Aursby states no facts indicating that any defendant ignored his medical or mental health issues. Instead, the record indicates that within weeks after the accident, Aursby had been examined by the prison doctor and had been examined and provided treatment by an optometrist. He had been examined by the psychiatrist and was prescribed mental health medications Thereafter, Aursby wrote conclusory complaints, included in his exhibits, stating his personal opinion that the care he had received was not adequate or sufficient. But he provides no particularized facts about his medical or mental health conditions after the initial care he received, about proper and specific requests he made to his

medical providers to describe his continuing issues and request follow up assessment and different treatment of those conditions, or what responses he received from any of those providers.

Thus, Aursby's Complaint as supplemented relies only on his own assessments of the care he has received and states clearly his disagreement with the diagnoses, testing, and treatment that his medical providers have ordered or prescribed. Such "disagreements between a health care professional and patient" over that patient's appropriate diagnoses or treatment plans simply do not suffice to support a finding of deliberate indifference as required for a viable Eighth Amendment claim regarding medical care. *DePaola*, 394 F. Supp. 3d at 590. Moreover, I cannot find that Aursby has presented facts showing that at any time since the accident any of the physicians knew that Aursby's conditions required additional or different care than they had prescribed or were already providing to him.

I also cannot find that Aursby's Complaint and submissions state any § 1983 claim against the optometrist, David Smith, for allegedly practicing optometry without a Virginia license. Even if Aursby had any credible evidence to support such a claim, it arises, if at all, only as a violation of state law, which is not independently actionable under § 1983. *United States v. Caceres*, 440 U.S. 741, 752-55 (1979); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Most

importantly, however, Aursby's charge that Smith is not properly trained, licensed, and registered to practice optometry in Virginia has no basis in any facts provided in Aursby's submissions. At the most, Aursby's exhibits indicate that based on the limited information he provided about David Smith in his inquiry, the agency could not identify the individual about whom Aursby was complaining. Compl. Exs. (B)(1), (D) at 7, 15, ECF No. 1-1. The agency's inability to pinpoint an individual based on Aursby's conclusory Complaint Form proves no wrongdoing on David Smith's part over which Aursby is entitled to bring suit against him under § 1983.

I also conclude that Aursby's submissions do not state any actionable § 1983 claim against other administrative defendants he has named. The nurses and the administrators were entitled to rely on the medical professionals to determine the appropriate course of care for Aursby's medical and mental health issues after the accident. *Miltier*, 896 F.2d at 854. Aursby's protection under the Eighth Amendment does not require administrators or nurses to second-guess or overrule the medical judgments of the professional medical doctors and optometrist provided to him.[5] *Id.*

---

[5] Aursby also has no separate claim against any of the defendants for failing to respond satisfactorily to his grievance documents. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).

Furthermore, administrative, or supervisory officials may not be held automatically liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  *Iqbal*, 556 U.S. at 676.  To state a § 1983 claim against a supervisory official, the plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Aursby has not alleged facts stating any such supervisory liability claim against any of the defendants about the quality of his medical care.

Based on the foregoing, I conclude the motions to dismiss filed by the VDOC and medical provider defendants must be granted.

In addition to the § 1983 constitutional claims, Aursby has alleged negligence claims against these defendants.  He asserts that I should exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.  Exercise of such jurisdiction is discretionary, however.  Moreover, § 1367(c) expressly allows me to decline to exercise supplemental jurisdiction in a case where I have dismissed all claims over which this court has original jurisdiction.  I decline to exercise supplemental jurisdiction over any of Aursby's negligence or other state law claims

against any of the VDOC defendants or the medical defendants.  Accordingly, I will dismiss his state law claims against these defendants without prejudice.

### III.  REMAINING DEFENDANTS.

Under 42 U.S.C. § 1983, an aggrieved party may file a civil action against a person for actions taken under color of state law that violate his federal constitutional rights.  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).  To determine if defendants Hyre, Clink, or Chevrolet/GM qualify as a person acting under color of state law for purposes of a § 1983 claim, the court must make two, closely related determinations.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

As to defendant Clink, the insurance company representative, Aursby does not assert any claim under the Constitution or federal law against this defendant. Likewise, Aursby states no facts showing that any action or inaction by this defendant could, in any way, be chargeable to the state so as to make Clink a state actor for purposes of a § 1983 claim.

Aursby is proceeding pro se, and I must liberally construe a pro se litigant's submissions, "however inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The phrase "deliberate indifference" is a term of art used in the legal analysis of claims by prisoners that a defendant has subjected them to cruel and unusual punishment in violation of the Eighth Amendment. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). I liberally construe Aursby's pro se Complaint as attempting to bring such § 1983 claims against Hyre and Chevrolet/GM for violating his Eighth Amendment rights.[6]

The § 1983 claims fail under the second part of the state actor analysis under *Lugar*, however. Aursby states no facts indicating that Hyre or Chevrolet/GM is a state employee or a state-owned entity. Nor does Aursby show that either Hyre or Chevrolet/GM acted together in any way with, or received assistance from, state officials related to the circumstances that allegedly harmed Aursby. Thus, Aursby simply has not demonstrated that any action by either of these defendants is "chargeable to the State" as required to prove the state action facet of viable claim under § 1983 and the Eighth Amendment. *Lugar*, 457 U.S. at 937.

Aursby also asserts that Chevrolet/GM violated the Commerce Clause of the Constitution in some unspecified way, apparently related to the accident that injured

---

[6] Aursby does not allege that defendant Clink violated his constitutional rights.

him.  The principles requiring generous construction of pro se complaints are not without limits, and the district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  I "cannot be expected to construct full blown claims from [a] sentence fragment[ ]." *Id.*  Under this authority, I decline to speculate as to what, if any, claim Aursby could conceivably bring against a car manufacturer under the Commerce Clause, seeking monetary damages for injuries from a car accident.

Finally, to the extent that Aursby may have claims against Hyre, Clink, or Chevrolet/GM under state law, such claims are not independently actionable under § 1983.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985) (finding § 1983 intended for vindication of federal rights guaranteed by federal law and not for tort claims for which there are adequate remedies under state law).  Moreover, § 1983 simply does not impose liability on individuals for violations of duties of care arising under state law.  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200–03 (1989).

Based on the foregoing, I conclude that Aursby fails to state any claim actionable under § 1983 against these defendants.  Nevertheless, Aursby asserts that I have, or could elect to exercise, subject-matter jurisdiction in this case to address his state law claims against these defendants.  I cannot agree.

Because Aursby has stated no claim under § 1983 against these defendants for depriving him of federal rights, the court has neither original federal question jurisdiction under 28 U.S.C. § 1331 nor any civil rights jurisdiction under 28 U.S.C. § 1343(a)(3).  Aursby's cited statutory authority for injunctive relief, 28 U.S.C. §§ 2283 and 2284, address the circumstances when a district court may stay a state court proceeding or convene a three-judge panel.  These statutes do not prove any basis on which to exercise jurisdiction over Aursby's state law claims against defendants Hyre, Clink, or Chevrolet/GM.

Aursby has asserted § 1983 claims against other defendants in this case — that they allegedly failed to protect him with a seatbelt and failed to provide medical and mental health care after the accident, for which there is subject-matter jurisdiction.  Based on these federal claims, Aursby suggests that I exercise supplemental jurisdiction over all of his state law claims under 28 U.S.C. § 1367(a).  This section provides that, with some noted exceptions,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Pursuant to § 1367(a), under limited circumstances, once a district court has valid subject-matter jurisdiction over a federal claim, it may, in its discretion, exercise supplemental jurisdiction over additional state claims if they

arise out of "a common nucleus of operative fact" such that the plaintiff would ordinarily be expected to try the claims in one judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). A state law claim can be properly considered as supplemental to a federal one if both claims "revolve around a central fact pattern," so that the proof for both claims rests on the same central factual issue. *White v. Cnty. of Newberry*, 985 F.2d 168, 172 (4th Cir. 1993). On the other hand, supplemental jurisdiction does not encompass claims that "do not grow out of a common nucleus of operative fact" and that are "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to" the federal claims. *Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 846–48 (4th Cir. 1974). In this case, Aursby's claims against Clink, Hyre, and Chevrolet/GM do not meet the common nucleus requirement for the exercise of supplemental jurisdiction.

Aursby also mentions diversity jurisdiction. That subject-matter jurisdiction allows a state law claim in federal court if the citizenship of the parties is diverse, and the amount in controversy is over $75,000. 28 U.S.C. § 1332(a), (b). To satisfy the diversity requirement, "no plaintiff may share a citizenship with any defendant." *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 352 (4th Cir. 2020). "The burden of persuasion for establishing diversity jurisdiction [rests] on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Aursby fails to show

the citizenship of his defendants.  Thus, 28 U.S.C. §1332 cannot serve as a basis for the exercise of jurisdiction over Aursby's state law claims.

IV. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1. The motions to dismiss, ECF Nos. 54 and 65, filed by the VDOC defendants and the medical defendants, are GRANTED, and all claims against these defendants pursuant to 42 U.S.C. § 1983 are DISMISSED WITH PREJUDICE;

2. All claims under state law against the VDOC defendants and the medical defendants are DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1367(c).

3. The motions to dismiss for lack of subject-matter jurisdiction by defendants Hyre and Clink, ECF Nos. 40 and 51, are GRANTED, and all claims against these defendants are DISMISSED WITHOUT PREJUDICE;

4. The Motion to Dismiss for failure to state a claim by defendant Clink, ECF No. 41, is DENIED as moot;

5. All claims against defendant Chevrolet, Inc., are summarily DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C § 1915(e)(B)(ii) for lack of subject-matter jurisdiction; and

6. Aursby's motion, ECF No. 43, seeking reconsideration to allow General Motors to be substituted in place of defendant Chevrolet, Inc., is DENIED as futile.

A separate Final Order will be entered herewith ending this case and removing it from the docket.

ENTER:   September 6, 2022

/s/  JAMES P. JONES
Senior United States District Judge